**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

DAISY CLAUDIO-CONCEPCION,

     Plaintiff,

     v.

BANCO BILBAO VIZCAYA
ARGENTARIA P.R., ET AL.,

     Defendants.

**Civil No. 12-1578 (SEC)**

## OPINION AND ORDER

Before the Court are the defendants' motions to dismiss (Dockets # 18 & 30) and the plaintiff's oppositions thereto (Dockets # 25 & 40). After reviewing the filings and the applicable law, the motions to dismiss are **GRANTED in part and DENIED in part**.

### Factual and Procedural Background

On July 19, 2012, Daisy Claudio-Concepción (Plaintiff) filed this suit under § 1983 claiming violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as well as under the Constitution and laws of the Commonwealth of Puerto Rico. Docket # 1. The defendants are Banco Bilbao Vizcaya Argentaria Puerto Rico (BBVA-PR), Juan J. Pereira, an investigating police officer of the Puerto Rico Police Department (PRPD) "assigned to the bank fraud division and working at the financial and banking sector in Hato Rey, Puerto Rico," Héctor M. Pesquera, PRPD's Superintendent, and

other unknown police officers of the PRPD (collectively, Defendants).[1]  The relevant facts,

as averred in the complaint, follow.

      Plaintiff is a 56-year-old recently retired school teacher who lives in California. On

July 20, 2011, Plaintiff visited the BBVA-PR, Hato Rey branch, to open a bank account and

deposit a $15,000 cashier's check issued to her by the BBVA Compass Bank in Riverside,

California (BBVA-CA). Id. ¶12. After handing in the cashier's check, Plaintiff was asked to

wait for a bank officer.  Id. ¶ 13. Then, three bank employees asked her to follow them to a

separate room. Id. No explanation was given to her. Id. As she entered the room, the

employees closed the door, while three armed PRPD police officers guarded the door. Id. ¶

14. One of them told Plaintiff that she was detained and could not leave the room until the

investigating police officer authorized it, because her cashier's check was allegedly false. Id.

      Several minutes later, Pereira entered the room and informed her that she was under

arrest for attempting to deposit a false check. Id. ¶ 15.  Pereira then began to read Plaintiff

her Miranda rights. Id. Plaintiff argued that she was being falsely accused. Id. During his

conversation with Plaintiff, Pereira admitted that neither he nor any bank officer had tried to

verify the alleged fraud with the BBVA-CA. Id.  Pereira finally allowed Plaintiff to call

BBVA-CA to confirm the validity of the cashier's check. Id. ¶ 16. She handed the phone to

Pereira, and the BBVA-CA bank officer confirmed that the check was properly issued to

Plaintiff. Id. ¶ 17. After being allegedly detained for almost two hours, the complaint avers,

---

[1] The motion to dismiss dated January 10, 2013 was filed by the Puerto Rico Department of Justice
as Pesquera and Pereira's counsel of record. On April 29, 2013, co-defendant BBVA-PR requested
leave to join their co-defendants' motion to dismiss. Docket # 30. The Court granted their request.
See Docket # 32.

Pereira told a BBVA-PR representative that they had made a mistake and Plaintiff should be allowed to leave. Id. at 16-17. Plaintiff was then allowed to leave the room. Id. This suit followed.

### Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008). In evaluating the motion, the court must accept as true all "well pleaded facts [and indulge] all reasonable inferences" in their favor. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). "Dismissal of a complaint under Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011). But even under the liberal pleading standards of Federal Rule of Civil Procedure 8, Twombly teaches that to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 556.

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court clarified that two underlying principles must guide a court's assessment of a complaint's adequacy. First, a court must discard any conclusory allegations in the complaint, as these are not entitled to an assumption of truth. Id. at 677. That is to say, courts must disregard "rote repetition of statutory language," McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 217 (1st Cir. 2012), as "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at

555). Some averments, moreover, "while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual." Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Iqbal, 556 U.S. at 670. A claim has facial plausibility when a "complaint's non-conclusory factual content . . . [permits] the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged.'" Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 639 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 663). Plausibility, the Court has instructed, is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 678. In doing so, courts must keep a bedrock principle in mind: A complaint must contain enough detail to give "a defendant fair notice of the claim and the grounds upon which it rests." Ocasio-Hernández, 640 F.3d at 8 (citing Fed. R. Civ. P. 8(a)(2)). So, while a complaint must be supported by facts and not mere generalities, "only enough facts to make the claim plausible" are required. Liu v. Amerco, 677 F.3d 489, 497 (1st Cir. 2012). "The place to test factual assertions for deficiencies and against conflicting evidence is at summary judgment or trial." Id.  Finally, because "the response to Twombly and Iqbal is still a work in progress," Menard v. CSX Transp., Inc., 698 F.3d 40, 45 (1st Cir. 2012), the First Circuit has cautioned that "'some latitude' may be appropriate where a plausible claim may be indicated 'based on what is known,' at least where . . . . 'some of the information needed may be in the control of [the] defendants.'" Id. (quoting Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir. 2012)).

### Applicable Law and Analysis

#### I.        Eleventh Amendment Immunity

A perusal of the complaint reveals that Pesquera and Pereira were sued in their individual and official capacities. <u>See</u> Docket # 1, ¶ 10. Defendants request dismissal of the § 1983 claims against them in their official capacities insofar as the Eleventh Amendment forecloses official capacity claims against state officers. Since the Court agrees with Defendants, and Plaintiff concedes this contention (<u>see</u> Docket # 25, p. 7), no further discussion is necessary. Accordingly, Defendants' request on this matter is **GRANTED**. <u>See Brait Builders Corp. v. Commonwealth of Massachusetts</u>, 644 F.3d 5, 11 (1st Cir. 2011). The personal capacity claims, however, are unabated by the Eleventh Amendment.

#### II.        Fifth Amendment Claim

Next, Defedants contend that Plaintiff's claim under the Fifth Amendment should be dismissed because "no federal employee is involved whatsoever in the alleged facts of this case and there is no 'state action' by the federal government".  Docket # 18, p. 16. As correctly argued by Defendants, the Due Process Clause of the Fifth Amendment applies "only to actions of the federal government –not to those of state or local governments." <u>Martínez-Rivera v. Sánchez-Ramos</u>, 498 F.3d 3, 8 (1st Cir. 2007). Because the complaint contains no allegations that any of the defendants are federal actors, Defendants' request is **GRANTED**.

III.    *Fourth Amendment Claim*

Defendants also aver that Plaintiff has failed to state a plausible civil rights claim under the Fourth Amendment against defendants Pesquera and Pereira. First, they assert that the complaint contains no allegations as to Pesquera's own acts or omissions in connection with Plaintiff's alleged civil rights violations. They also contend that Pesquera was not even appointed as Superintendent of the PRPD at the moment of the alleged incident. As to Pereira, Defendants argue that pursuant to Plaintiff's own allegations in the complaint, Plaintiff's alleged detention was a valid investigatory stop or Terry stop and thus dismissal should be granted at this stage. Docket # 18, p. 9-13 (citing Terry v. Ohio, 392 U.S. 1 (1968)). Plaintiff, however, posits that Defedants' actions did not constitute a Terry stop, but an arrest without probable cause. Docket # 25, p. 8; Docket # 40, p. 4-5.

To prove liability under § 1983, a plaintiff "must show by a preponderance of the evidence that (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Vélez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1 Cir. 2006). Moreover, under § 1983, government officials may only "be held liable if the plaintiff can establish [a] constitutional injury result[ing] from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodríguez-García v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007) (internal quotation marks omitted). A plaintiff must therefore link each individual defendant to the alleged violation of federal rights. González-Piña v. Rodríguez, 407 F.3d 425, 432 (1st Cir. 2005). In other words, each defendant responds for his own acts or omissions in light of his

duties; there is no liability on the basis of respondeat superior. <u>Rizzo v. Goode</u>, 423 U.S. 362, 375-77 (1976); <u>Febus-Rodríguez v. Betancourt-Lebrón</u>, 14 F.3d 87, 91-92 (1st Cir. 1994); <u>see also</u> <u>Barreto-Rivera v. Medina-Vargas</u>, 168 F.3d 42, 48 (1st Cir. 1999). The plaintiff must also "show that there is 'an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory official.'" <u>Barreto-Rivera</u>, 168 F.3d at 48 (citing <u>Gutiérrez-Rodríguez v. Cartagena</u>, 882 F.2d 553, 562 (1st Cir. 1989)).

     *A.  Supervisory liability claim against Pesquera*

In the present case, the complaint is devoid of specific allegations against Pesquera as Superintendent of the PRPD.  "[A]n adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." <u>Ocasio-Hernández</u>, 640 F.3d at 12. The First Circuit has made clear that "[l]iability under Section 1983 'cannot rest solely on a defendant's position of authority.'" <u>Rodríguez-Ramos v. Hernández-Gregorat</u>, 685 F.3d 34, 41 (1st Cir. 2012) (citing <u>Ocasio-Hernández</u>, 640 F.3d at 16).

Even further, Defendants allege that Pesquera was not the Superintendent of the PRPD when the incident occurred. Plaintiff does not rebut this contention in her opposition, and the Court takes judicial notice of the fact that Pesquera was appointed Superintendent of the PRPD in 2012. The facts alleged in the complaint occurred on July 20, 2011. Therefore, a causal link cannot be established between Pesquera's actions or inactions and the alleged violation to Plaintiff's constitutional rights. Defendants' request on this matter is **GRANTED**.

B.      *Pereira's liability*

Here, Defendants do not contest the first prong of the § 1983 analysis; that is, that Pereira's actions were taken under color of state law. They contend instead that Plaintiff's complaint fails to establish a violation of the Fourth Amendment.

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. Amend. IV. "Not every interaction between a police officer and a citizen constitutes a seizure triggering Fourth Amendment protections." U.S. v. Ford, 548 F.3d 1, 4 (1st Cir. 2008); see also Terry, 392 U.S. at 20 n. 16 (1968). The First Circuit has explained that "encounters 'between law enforcement officials and citizens generally fall[ ] within three tiers of Fourth Amendment analysis, depending on the level of police intrusion into a person's privacy.'" Id. (citing U.S. v. Young, 105 F.3d 1, 5-6 (1st Cir. 1997)).  "The lowest tier, which does not implicate the Fourth Amendment, involves minimally intrusive interactions such as when police officers approach individuals on the street or in public places to ask questions." Id. However, "[i]f the encounter amounts to more than a minimally intrusive interaction, a seizure occurs, either a de facto arrest requiring probable cause or an investigative (or Terry) stop necessitating reasonable suspicion." Id.

The Supreme Court has adopted the standard set forth in U.S. v. Mendenhall, 446 U.S. 544, 554 (1980), "that 'a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Ford, 548 F.3d at 4. To constitute a seizure, the First Circuit has required that "one's liberty be restrained by either physical force or an assertion of authority." Id. Therefore, "[u]nder the objective totality of

the circumstances standard, we look not to 'whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Id. at 5 (citing California v. Hodari D., 499 U.S. 621, 628 (1991)). "Assessments of this type 'are highly fact-specific and must be performed on a case-by-case basis.'" Ford, 548 F.3d at 7 (citing U.S. v. Taylor, 511 F.3d 87, 92 (1st Cir. 2007)); see also U.S. v. Berry, 636 F.2d 1075 (5th Cir. 1981) ("The decisions on the Fourth Amendment issues often turn on minute factual differences in the cases and therefore require careful, case-by-case consideration.").

As indicated above, Defendants argue that Pereira's conduct amounted to a permissible Terry stop. "When conducting a Terry stop, a police officer may briefly detain an individual for questioning if the officer has 'reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" Schubert v. City of Springfield, 589 F.3d 496, 501 (citing U.S. v. Sokolow, 490 U.S. 1, 7 (1989)). This inquiry "involves two steps, first, 'whether the officer's action was justified at its inception,' and second, 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" Id. (quoting Terry, 392 U.S. at 20). On the other hand, "[w]here police actions taken during the detention exceed what is necessary to dispel the suspicion that justified the stop, the detention may amount to an 'arrest' and is lawful only if it is supported by probable cause." Flowers v. Fiore, 359 F.3d 24, 29 (1st Cir. 2004) (citing U.S. v. Quinn, 815 F.2d 153, 156 (1st Cir. 1987)).

According to the complaint, Plaintiff was taken to a separate room without explanation (Docket # 1, ¶ 13); the room was guarded by three armed police officers (id. ¶

14); one of the police officers told her that she could not leave the room until Pereira arrived (id.); immediately after his arrival, Pereira informed her that she was under arrest for attempting to deposit a false check and read Plaintiff her Miranda rights (id. ¶ 15); during her conversation with Pereira, he recognized that up to that moment nobody had called the BBVA-CA to confirm the validity of the check (id.); finally, after allowing Plaintiff to call the BBVA-CA and thus concluding that the check was not false, Pereira told a BBVA-PR's representative that "the check is good, and plaintiff must be allowed to go." Id. ¶ 17.

Accepting as true all well pleaded facts and indulging all reasonable inferences in Plaintiff's favor, these allegations are sufficient at this stage to establish a colorable Fourth Amendment claim. The Court must decline Defendants' invitation to determine that the alleged detention was a permissible Terry stop. From a simple evaluation of the applicable standard delineated above, it is pellucid that a determination on this regard is not suitable for this stage. See Liu, 677 F.3d at 497 ("The place to test factual assertions for deficiencies and against conflicting evidence is at summary judgment or trial."). Defendants' request for dismissal of Plaintiff's Fourth Amendment claim is thus **DENIED**. Defendants, however, may reassert their challenge at the summary judgment stage.

### IV.    Fourteenth Amendment Due Process Claim

Defendants next contend that because Plaintiff has brought forth factual allegations for which protection is specifically available under the Fourth Amendment, the Fourteenth Amendment claim must be dismissed with prejudice. Docket # 18, p. 18.

The Supreme Court has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government

behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing' these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)); see also id. at 281 (Kennedy, J. concurring in judgment) ("I agree with the plurality that an allegation of arrest without probable cause must be analyzed under the Fourth Amendment without reference to more general considerations of due process"); see also Coltin v. Town of Londonderry, No. 98-170, 1999 WL 813950, * 3 (D.P.R. May 5, 1999).

Besides requesting relief under the Fourteenth Amendment, Plaintiff's complaint does not elaborate on this claim. Nor does she challenge Defendants' contention on this matter, not even with an argument in passing. Therefore, the Court agrees with Defendants that the Fourth Amendment is the explicit textual source for a § 1983 claim in the present case. Defendants' request of dismissal regarding Plaintiff's § 1983 claim under the Fourteenth Amendment as an independent source of relief is hereby **GRANTED**.

*V.    Conspiracy Claim*

In this circuit, a conspiracy claim may be actionable under § 1983. Landrigan v. City of Warwick, 628 F.2d 736, 742 (1st Cir. 1980). A civil rights conspiracy or conspiracy claim under § 1983 is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." Estate of Bennett v. Wainwright, 548 F.3d 155 (1st Cir. 2008) (quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988)). It is well established that private parties "may be held liable under Section 1983 where … the private parties

conspire with or are otherwise willful participants in joint activity with the state or its agent." <u>Caraballo-Cordero v. Banco Financiero de P.R.</u>, 91 F.Supp. 2d 484, 491 (D.P.R. 2000); <u>see</u> <u>Dennis v. Sparks</u>, 449 U.S. 24, 27 (1980); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 152 (1970); Erwin Chemerinsky, <u>Federal Jurisdiction</u> 515 (6th ed. 2012).   Two requisites must be satisfied: "plaintiff must allege and prove both a conspiracy and an actual deprivation of rights; mere proof of a conspiracy is insufficient to establish a section 1983 claim." <u>Landrigan</u>, 628 F.2d at 742 (quoting <u>Hampton v. Hanrahan</u>, 600 F.2d 600, 622 (7th Cir. 1979), <u>rev'd in part on other grounds</u>, 446 U.S. 754 (1980)). "The gist of the (Section 1983) cause of action is the deprivation and not the conspiracy. Conspiracy is merely the mechanism by which to obtain the necessary state action, or to impose liability on one defendant for the acts of the others performed in pursuance of the conspiracy." <u>Id.</u> at 742 (internal quotation marks and citations omitted). Nevertheless, a conspiracy claim must be alleged through specific facts, setting forth both "the existence and scope of the alleged conspiracy." <u>Slotnick v. Staviskey</u>, 560 F.2d 31, 33 (1st Cir. 1977).   In line with this requirement, the First Circuit has stated that "it is appropriate to require that the relationship or nature of cooperation between the state and a private individual be pled with some detail." <u>Caraballo-Cordero</u>, 91 F. Supp. 2d at 491 (citing <u>McGillicuddy v. Clements</u>, 746 F.2d 76, 77 (1st Cir. 1984)).

Defendants' challenge to Plaintiff's conspiracy claim centers on the alleged lack of "specific factual allegations" in support of her claim. Docket # 18, p. 16-17. In her complaint, Plaintiff alleges only that Defendants acted "under color of state law" and "jointly and in concert" with each other. Docket # 1, ¶ 20. The complaint, however, does not

contain facts in support thereof.  It lacks information about the relationship between Pereira and the other police officers and BBVA-PR. Furthermore, it is devoid of factual allegations as to a previous agreement between them to violate Plaintiff's constitutional rights. In fact, in her opposition to the motion to dismiss, Plaintiff basically argues that the mere participation of the PRPD officials in the alleged detention is sufficient to plausibly state a conspiracy claim. These allegations, however, do not fulfill the factual requirements of a conspiracy claim. Accordingly, Defendants request for dismissal is **GRANTED**.

*VI. Qualified Immunity*

Qualified immunity is an affirmative defense against personal liability which may be raised by state official. <u>Whitfield v. Meléndez-Rivera</u>, 431 F.3d 2, 6 (1st Cir. 2005). It "provides a safe harbor for public official acting under the color of state law who would otherwise be liable under 42 U.S.C. § 1983 for infringing the constitutional rights of private parties." <u>Id.</u>; <u>see also</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987).

To determine if a person is entitled to qualified immunity a court must decide the following: (1) whether plaintiff's allegations establish a constitutional violation; and (2) if so, whether the right was clearly established at the time of the alleged violation. <u>Barton v. Clancy</u>, 632 F.3d 9 (1st Cir. 2011); <u>Maldonado v. Fontanes</u>, 568 F.3d 263 (1st Cir. 2009). There are two aspects with regard to the "clearly established" prong: (1) "'the clarity of the law at the time of the alleged civil rights violation,' and (2) whether, given the facts of the particular case, 'a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights.'" <u>Barton</u>, 632 F.3d at 22 (citing <u>Maldonado</u>, 568 F.3d at 269).

Defendants do not argue against the clarity of the law at the time of the alleged civil rights violation. Rather, they contend that from the facts of the complaint it is clear that Pereira "did not violate Plaintiff's constitutional rights." Docket # 18, p. 15. But the Court already established that Plaintiff's complaint states a plausible claim under the Fourth Amendment and, at this stage, the Court is "unable to make the factual determinations that must underpin any ruling on qualified immunity." Peña-Peña v. Figueroa-Sancha, 866 F. Supp. 2d 81, 94 (D.P.R. 2012). "The role of each defendant will be made clearer in discovery, and, after further factual development, defendants are free to renew their claim of entitlement to qualified immunity in a motion for summary judgment if they think it appropriate." Peña-Peña v. Figueroa-Sancha, No. 12-1939, slip. mem. at 1-2 (1st Cir. Dec. 10, 2012) (denying qualified immunity-based interlocutory appeal). Accordingly, Defendants' qualified immunity defense is deferred for a later stage of the proceedings.

VII.   *The Supplemental State-Law Claims*

Because Defendants' plea for the dismissal of Plaintiff's state-law claims assumes the dismissal of all of her federal-law claims, the Court need not address the same. In any event, federal jurisdiction in the present case is also predicated on diversity jurisdiction. Defendants' request for dismissal of Plaintiff's state law claims is thus **DENIED**.

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED in part and DENIED in part**. Plaintiff's Fifth and Fourteenth Amendment claims are **DISMISSED with prejudice**. The supervisory claim against Pesquera and the conspiracy claim are also **DISMISSED with prejudice**. The surviving claims, therefore, are Plaintiff's

Fourth Amendment personal-capacity claim against Pereira and the other unknown police officers, as well as her claims under the Constitution and laws of the Commonwealth of Puerto Rico.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of July, 2013.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge